Mr. Justice Sheparb
delivered the opinion of the Court:
This is an interference proceeding the issue of which was declared in the following words: “The design for a hinge as herein shown and described.”
This hinge, as described by the examiner of interferences, “consists of flat leaf members extending in the axial line of the pintle, said leaf members having at their outer ends a pair of narrow flanges upturned at a right angle thereto and in alignment with each other. In other words, the invention is a design applied to what is commonly known as ‘butt-hinges/ and it resides simply in turning up^the ends of the leaves of the hinge outwardly at right angles to the main body of the hinge.”
The contemplated, immediate use of the hinge as designed is in the divided shoe-lasts now in general operation in shoe factories. In the decision of the acting Commissioner the following statement is made :
“ It appears that Arnold, the assignee of St. Amand, filed an application for a mechanical patent on a divided last, including a hinge which was held by the office to be the mechanical equivalent of the hinge here in controversy, and that application was placed in interference with an application for a mechanical patent filed by Tyler, including his present hinge. The Arnold hinge was provided with rounded projections at the end of the leaves, instead of right-angled flanges, and therefore, although the hinges were not of the same shape or design, they were used for the same purpose and performed the same function in substantially the same way. Part of the testimony taken in that interference has by stipulation been made a part of the record in this case.”
*466 Abel D. Tyler introduced evidence tending to show the following facts: Conception of the design and the making of two hinges embodying it in September, 1893. . These hinges were left in the desk of his partner Mawhinney from that time until about January, 1897, when in removing from Worcester to Brockton they were lost. Nothing more was done until he took the matter up again in March and on April 21, 1897, when he caused two sample hinges of this design to be made. In June, 1897, a number of these were ordered manufactured and when made were used in shoe-lasts. John St. Amand’s testimony tended to show that he conceived the idea of the design arid disclosed it to others in January, 1897. In February he made a leather hinge, and shortly after a tin hinge, which illustrate the design. About June 5, 1897, he had an iron hinge of the same pattern made by a smith. These were produced and made exhibits.
The production of the hinges of this design in September, 1893, was testified to by Tyler himself, and corroborated by Mawhinney, who testified from memory that the hinges then made were substantially the same as those made in June, 1897.
The examiner of interferences and examiners in chief accepted this testimony as true, and awarded priority to Tyler.
The acting Commissioner’s view of this evidence on behalf of Tyler is thus stated in his decision:
“ He claims to have made sketches of the invention and also two hinges embodying it in 1893, but according to his own showing he did not make other hinges or do anything further in reference to the invention until sometime in 1897, after St. Arnand claims to have entered the field, but, on the contrary, merely put the hinges aside in Mawhinney’s desk and allowed them to become lost or destroyed without paying any further attention to them. The hinges were, according to Mawhinney’s statement, probably thrown *467 away with a lot of old scraps of iron. (Q. 23.) Tyler’s action in putting the hinges aside and doing nothing further in the matter for three years and a half is particularly significant in view of the fact that in 1893 the company was engaged in manufacturing hinges as well as lasts, and of the further fact that Tyler not only claims to have appreciated the value and utility of his hinge, but it also appears that during a part at least of his delay he knew of Arnold’s hinge embodying the same general ideas being put on the market by a rival company. His inaction under the circumstances is inconsistent with his claim that he was in possession of the invention. His conduct raises a strong presumption that he was not and makes it incumbent upon him to establish the fact by evidence so clear and convincing as to leave no reasonable doubt in the matter.
“ The testimony on behalf of Tyler is not sufficient to overcome the presumption agaifist him due to his inaction whether or not it would be sufficient under ordinary circumstances to establish the fact that he was in possession of the invention in 1893. He produces no testimony to corroborate him in his statement that he made sketches and two hinges in 1893 save that of Mawbinney, his partner in the business of manufacturing lasts. His own testimony is, of course, insufficient to establish the fact, and the testimony of Mawbinney is far from satisfactory. Mawhinney does not seem to have any personal or certain knowledge when the alleged disclosure was made to him (X-Q. 31 and X-Q. 40), but it seems probable from his answer to cross-question 40 that he fixed on 1893 because of statement made by Tyler.
“He states that the sketches and hinges embodied the present invention, but his conduct in reference to the hinges and his answer to cross-question 63 indicate that he paid very little attention and attached very little importance to them. He was testifying five years after the event, and, in *468 view of the fact that the sketches and hinges have not been produced to show what was done, very little weight can be given to his oral testimony when there is no reason shown why the matter should have been fixed in his mind. Deering v. Winona Harvester Works, 69 O. G. 1,641.
“St. Amand contends that what Tyler did in 1893 was merely to test the quality of the steel which the company was buying by bending it to see if it would crack. This is not improbable, and, although in doing this he may have bent the end of the hinge at right angles to the body, it does not necessarily follow that he produced a complete hinge having the appearance of the one in issue. He and Mawhinney may, in the light of subsequent events, have concluded that the hinge then produced did embody the invention, but the evidence is insufficient to establish the fact satisfactorily. Tyler for the first time in his rebuttal testimony produced a sketch of the invention said to have been made September 4, 1893, but it does not appear that any one else saw it. Tyler alleges that others besides Mawhinney knew of his invention prior to 1897, but he failed to call any of them to testify. Poland, who was bookkeeper of the Mawhinney Company from 1892 until December, 1896, was called by St. Amand and states that he never saw or heard of the hinges, although he would probably have seen them if they had been in Mawhinney’s desk. Tyler admits that Poland would probably know of the hinges. Wheeler, called by St. Amand, states that he helped to pack Mawhinney’s desk when the works were moved to Brockton, but he did not see the hinges referred to. This testimony does not, of course, prove that Tyler did not have the invention prior to 1897, but that question is not susceptible of direct contradiction. Beals v. Finkenbiner, 82 O. G. 508.
“Taking into consideration all of the circumstances, it can not be held that Tyler has established a possession of the invention prior, at any rate, to the spring of 1897, when *469 he claims to have disclosed it to Moore. He states that he talked with Moore about it in March, 1897, and that in April or May Moore furnished him with sample hinges. Moore corroborates him as to the conversation, but states that he disclosed the invention to Tyler, instead of Tyler disclosing it to him. He says that Tyler seemed to think it was a good thing and requested him to make samples. He thinks the samples were furnished in May. Moore states that the suggestion was made after talking over the question whether the rounded projections on the Arnold hinge would split the last, thus indicating that prior to that time Tyler was familiar with the Arnold hinge. This testimony casts still further doubt on Tyler’s claim that he was in possession of the invention prior to 1897.”
Passing then to the testimony relating to the acts of both claimants in 1897, he said:
“Even if Tyler made the disclosure in March, it occurred after St. Amand had entered the field, since the testimony shows that he had disclosed the invention to others and made his Exhibit ‘Leather Hinge’ prior to that time. St. Amand disclosed the invention to others in January, and the leather hinge was made as early as February, 1897. He afterward made a tin hinge, and in June had an iron hinge made. The leather hinge is in my opinion a reduction to practice of the Invention, as is also the tin hinge which was made subsequently. Any ordinary observer would recognize the fact that they exhibit the same shape or design of hinge as the iron hinges made by the parties, and therefore if they constituted part of the prior art the iron hinges would not be patentable thereover. The material of which the article is made and its size are immaterial in design cases, since design relates merely to form or appearance. A design made of glass and used as a paper-weight or an ornament would be the same design as, and constitute a reference for, an article of the same shape made of metal and used in a machine to perform a mechanical function. In other words, the shape must be new to be *470 patentable as a design. If an article of that shape has been produced, it is immaterial whether or not it has been used practically in a mechanical sense, and this is admitted in the brief on behalf of Tyler. The production of an article embodying the design is a completion of the invention and corresponds to the reduction to practice of a mechanical invention. Ex parte Tournier, 90 O. G. 1948.”
Approving the views expressed by the acting Commissioner, we have quoted freely from his decision, and see no occasion for a further review of the evidence, or an extended discussion of the points involved. His criticism of the evidence concerning Tyler’s earlier conception and reduction to practice, and conclusion in respect of the weight to be given thereto, in the light of the surrounding circumstances, has foundation in the opinion of this court in a number of decisions, some of which he referred to and quoted. See Beals v. Finkenbiner, 12 App. D. C. 23; Warner v. Smith, 13 App. D. C. 111; Appert v. Schmertz, 13 App. D. C. 117, 131; Traver v. Brown, 14 App. D. C. 34; Esty v. Newton, 14 App. D. C. 50, 54; Neilson v. Bradshaw, 16 App. D. C. 92, 102; Fefel v. Stocker, ante, p. 317; Reichenbach v. Kelley, ante, p. 333.
There seems to be no reasonable ground to doubt that St. Amand made and exhibited the leather, and most probably also the tin hinge of his design, in succession, before March, 1897.
Comparison of these, as produced on the hearing, as well also as their photographs in connection with the photograph of Tyler’s hinge, strengthen the conclusion of the acting Commissioner set out above, that they show completion of the inventive act.
This renders it unnecessary to consider the evidence concerning Tyler’s alleged taking up of the invention in March, 1897, and the production of the sample hinges about April 21, 1897. The right of St. Amand had become fixed before either of those dates. It follows that the decision in favor of Tyler was properly reversed.
*471 The design of this issue having been found patentable by the authorities of the Patent Office, and made the basis of a declaration of interference, that question is not involved. Therefore, in adopting the language of the acting Commissioner in regard to the reduction of the design to practice, we are not to be understood as indorsing its patentability, or as intimating that its production is the result of the genius, as well as the industry, efforts and expense of the producer, as provided in the statute. Sec. 4929 R. S. •
The decision appealed from will be affirmed. It is so ordered, and that this decision and the proceedings herein be certified to the Commissioner of Patents. Affirmed.